IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

| | |
|---|---|
| NIA S. LUCAS,<br><br>  Plaintiff,<br><br>  v.<br><br>TOWN OF GOULDSBORO, MAINE,<br><br>GOULDSBORO POLICE DEPARTMENT*,<br><br>CHIEF JIM MALLOY, in his<br><br>individual and official capacity,<br><br>SGT. WAYNE ROBBINS, in his<br><br>individual and official capacity,<br><br>JOSHUA MCINTYRE, Town Manager, in his<br><br>individual and official capacity,<br><br>  Defendants. | Case No. _____<br><br><br><br><br><br><br><br>**JURY DEMANDED** |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

INTRODUCTION

1. This is a civil action for violations of Plaintiff Nia S. Lucas's federal and state constitutional rights, arising from threats of arrest, obstruction of property access, and racially discriminatory treatment by local law enforcement in Gouldsboro, Maine. Despite being a lawful joint owner of the subject residence and the protected party under a valid Protection from Abuse (PFA) Order, Plaintiff was unlawfully prevented from

[1]'accessing her property and subjected to discriminatory treatment based on her race and gender.

2. The misconduct by law enforcement officers included but was not limited to threats of arrest without legal justification, restricting property rights of Black homeowner while unlawfully protecting that of a white home, and threats of harm via arrest or inaction, refusing to take and process reports of crime(s), refusing to process court documents in accord with the state law, obstructing protective orders while denying civil stand by or escort, all of which have denied the Plaintiff her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. 1981, 1982, 1983; and Maine law, including the Maine Civil Rights Act and the Maine Human Rights Act.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 (federal question), 28 U.S.C. 1343 (civil rights), and supplemental jurisdiction over state law claims under 28 U.S.C. 1367.

4. Venue is proper in this District under 28 U.S.C. 1391(b), as the events giving rise to these claims occurred in Hancock County, Maine.

## PARTIES

5. Plaintiff Nia S. Lucas is a Black woman, a service-connected disabled military veteran, and lawful joint tenant of 49 Sandpiper Shores Rd. Gouldsboro, ME 04607, in Hancock County Maine.

---

[1] * The Gouldsboro Police Department is not a separate legal entity but is included in the caption for clarity regarding its role and involvement in the underlying conduct.

6. Plaintiff is listed as a joint tenant with right of survivorship on the deed recorded in Hancock County on 11/23/2021. See Exhibit A.

7. Defendant Town of Gouldsboro is a municipality in the State of Maine and is responsible for the policies, practices, and customs of the Gouldsboro Police Department and the actions of its officials, including its Town Manager and Chief of Police.

8. The Gouldsboro Police Department is a department within the Town of Gouldsboro and is not a separate legal entity. Its officers and officials act on behalf of the Town. Accordingly, the Town of Gouldsboro is responsible for the policies, customs, and conduct of its Police Department and the officials named herein.

9. Defendant Chief Jim Malloy is the Chief of Police of the Gouldsboro Police Department and is sued in both his individual and official capacities.

10. Defendant Sgt. Wayne Robbins is a supervisory officer employed by the Gouldsboro Police Department and is sued in both his individual and official capacities.

11. Defendant Joshua McIntyre is the Town Manager of Gouldsboro, Maine. Upon information and belief, he was made aware of the conduct of the Gouldsboro Police Department and failed to take any corrective action. He is sued in both his individual and official capacities.

FACTUAL ALLEGATIONS

10. Plaintiff is a lawful joint tenant of residential property in Gouldsboro, Maine, 49 Sandpiper Shores Rd., Gouldsboro, ME 04607; jointly owned with her ex-partner, Alexander Y. Miller. They were never married.

11. In and around 06/10/2025 Sgt. Wayne Robbins of the Gouldsboro Police Department misinformed Ms. Lucas by email that she would need a court order to enter her Sandpiper Shores home.

12. Prior to her arrival in Maine, Miller attended a protective order hearing, Case no. D-041-FM-25-000099, on 06/16/2025 he was arrested in that Maryland courtroom for his crimes against Ms. Lucas.

13. In and around 05/27-05/29/2025 Mr. stalked Ms. Lucas, criminally trespassed and burglarized Ms. Lucas home stealing her service animal in the state of Maryland, Case no. D-041-CR-2500585.

14. Miller's actions were a form of coercive control; he crossed state lines with Ms. Lucas' service animal and her family pet into Maine to force her to recover the animals from the state where private firearms are not registered.

15. Ms. Lucas and Miller were in Court regarding a permanent protect order that was denied by the judge Mark S. Chandlee in the Calvert County Circuit Court in Maryland.

16. During that hearing Miller admitted to one of more instances of stalking, as well as, burglarizing Lucas' home, stealing her service animal, and an altercation with Ms. Lucas Infront of the children while she was seated.

17. Miller also said that he had not possessed any guns in the past year and Ms. Lucas knew that was false, her shotgun was in Maine and the relationship had ended only two months prior and there had not been any sale of firearms that she knew about.

18. Thus, immediately after the hearing for her protection she traveled to Maine, residing in Connecticut at a confidential address for a period. That is when she obtained the restraining order in Connecticut.

19. Ms. Lucas explained to the Gouldsboro Police Department Sgt. Robbins that she believed that it was Miller's aim to unalive her if she went to retrieve that service animal.

20. She also informed that he was armed, that in his possession was her shotgun, as well as a rifle and 9mm handgun.

21. When Ms. Lucas arrived in Maine, Gouldsboro Police Department Chief Malloy and Sgt. Robbins continued to state that she needed an order to enter her home.

22. Both Chief Malloy and Sgt. Robbins aggressively informed Ms. Lucas they would arrest her if she went to her Gouldsboro property.

23. This was in the face of a valid Protection from Abuse (PFA) Order in Maine again Ms. Lucas the protected party, Docket no. BANDC-PFA-2025-00204 dated 06/23/2025. The Order did not bar Plaintiff from the home, nor did it grant exclusive possession to Miller.

24. Miller served the order in and around 06/23/2025.

25. From June 10th until present, the Plaintiff was repeatedly misinformed that she needed a court order to enter her home in Gouldsboro and threatened with arrest by the Gouldsboro Police Department, including Chief Malloy and Sgt. Robbins, if she attempted to enter property or her own home.

26. Miller received protection to use and access the Gouldsboro home as he pleased without threat.

27. In and around 07/08/2025, Chief Malloy left Ms. Lucas the following voicemail: "Hello, this is Chief Malloy good for PD. Just wanna let you know I spoke to the DA. He advised that the best thing to do is to not take sides. Well, I can't tell you to go there, and I can't tell you not to go there. So, whatever happens happens, but just be aware that if uh if, if things go sideways. Somebody's gonna be liable for that and we're just gonna leave it at

that, but uh we're not gonna go there with you and we're not gonna go there and stop you from going so it's up to you at this point. Thank you, bye.

28. Ms. Lucas upon hearing that she would deny civil stand by and or escort with a valid PFA and told "whatever happens happens" was in fear for her life.

29. Ms. Lucas believes that Miller and the Gouldsboro Police Department were a threat to her and her children, and working together to obstruct her from her home, assured us that she did not have any protection from the state of Connecticut, and perhaps something more diabolical.

30. This is supported by the fact that Miller is the star witness for VHC Health the Defendant in a civil rights complaint where Ms. Lucas is the Plaintiff.

31. She has a race discrimination complaint against VHC Health discrimination from her pregnancy with Ms. Lucas 2018 pregnancy with Ms. Lucas and Miller unborn son: Civil Action no. 1:22-cv-00987-PTG-JFA in the 4th Circuit.

32. In and around 07/09/2025, VHC Health produced text communications between themselves and Miller, DEF DISC EX 46-0001, where Miller texts to the VHC Health:

33. "I'm currently in Maine right now and I have to go to Connecticut July 1 so I'm gonna stick around this house because against police orders. She arrived here at my home last night with a locksmith trying to get in."

34. As well as "Excuse me, she arrived at my house last night against police orders."

35. Miller knew Ms. Lucas was being obstructed by Gouldsboro Police Department from lawful entering the Gouldsboro home to recover some of her children's items to include her shot gun, medical supplies and devised clothing, shoes, toys, dog items, and such.

36. After the 07/10/2025 hearing on the PFA between Ms. Lucas and Miller in Maine, the PFA was extended to 08/13/2025.

37. During the 07/10/2025 hearing Ms. Lucas was informed by the presiding judge that she did not require a court order to enter her home.

38. Also, during the 07/10/2025 PFA hearing the judge asked Miller if he would consent to a PFA solely for Ms. Lucas children excluded and no finding of abuse. Miller said, no.

39. During the 07/11/2025 a Restraining Order Ex-Parte in the state of Connecticut between Ms. Lucas and Miller, Ms. Lucas again the protected person; Case no. FST-FA25-5032524-S.

40. Miller was present at the hearing and informed the presiding judge under oath that he was in Connecticut.

41. Ms. Lucas was in Maine at a confidential address.

42. During the hearing Miller informed the judge under oath that he had been served by Gouldsboro Police Department.

43. Ms. Lucas then informed the judge that the Gouldsboro Police Department, though they had served Miller, the Connecticut order alongside the Maine order, the Gouldsboro Police Department had failed on two separate occasions to provide the Court Return of Service to obstruct Ms. Lucas from obtaining a permanent protective order against Miller before a custody hearing that was to be held seven (7) days later on 07/08/2025.

44. The presiding judge reviewed the docket and apologized to Ms. Lucas for not being able to provide permanent relief and continued the hearing for thirty (30) days so that proper service could be provided to Miller and with Return of Service provided to the Court.

45. That said, Ms. Lucas had been informed by Dean Nasson, a victim advocate at the Hancock County District Attorney Office, that there was no order restricting her access to the home.

46. Mr. Nasson also informed Ms. Lucas that there were no reports of her stolen firearm from her Gouldsboro home, remitted by the Gouldsboro Police Department.

47. In and around, 07/11/2025, Ms. Lucas contacted Hancock County Sheriff, and they denied her a civil escort and/or stand by, because they stated Chief Malloy report that the Hancock County District Attorney informed him that a court order was required for her to enter her home.

48. In and around, 07/11/2025, Ms. Lucas contacted Maine State Police who denied her a civil escort and/or stand by, because in so many words Gouldsboro Police was passing the buck.

49. Despite Plaintiffs lawful ownership and the absence of any court order barring her from the property, the Gouldsboro Police Department refused to provide civil standby, failed to take reports of stolen property (including a shotgun), and ignored Plaintiffs Freedom of Access Act (FOAA) request for relevant documents.

50. However, for Miller they threatened Ms. Lucas and obstructed her from entering her Gouldsboro home, as well as obstructing her from obtaining a permanent order of protection from Miller, by purposefully not returning service to the Court in Connecticut.

51. Ms. Lucas email and left for message for Gouldsboro Police Department to Return Service or provide it to her to care up to Connecticut, and like with the FOAA request, they never responded.

52. Plaintiff has effectively been barred from entering her home for over a month due to the actions and threats of law enforcement.

53. Presently she is afraid of being injured or murdered by both Miller and the Gouldsboro Police Department.

54. The Plaintiff believes and alleges that she was treated less favorably than her white ex-partner due to her race and gender, in violation of her constitutional and statutory rights.

55. This has caused extreme emotional and physical stress.

## CLAIMS FOR RELIEF

### COUNT I

*42 U.S.C. § 1983: Violation of Fourteenth Amendment (Due Process and Equal Protection)*

56. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57. To state a claim under the Fourteenth Amendment, Plaintiff must allege (1) she was treated differently from similarly situated individuals, (2) the differential treatment was based on race or gender, and (3) the action lacked a rational basis or was motivated by discriminatory intent.

58. Defendants treated Plaintiff, Ms. Lucas, a Black disabled woman, differently from her white able bodied male co-tenant, Alexander Y. Miller, selectively enforcing the law to her disadvantage by threatening arrest among other harms, denying her entry into a jointly owned home, refusing to process reports of crime to include her stolen firearm, as well as, denying protection. These actions deprived Plaintiff of her rights to due process and equal protection.

59. The Fourteenth Amendment protects against intentional discrimination based on race or gender, and the plaintiff's allegations of selective enforcement and denial of access to her property could constitute such a violation if proven. Case law supports that intentional discrimination by state actors violates the Equal Protection Clause.

## COUNT II

*42 U.S.C. § 1983: Violation of Fourth Amendment (Unlawful Seizure/Constructive Detention)*

60. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.
61. A Fourth Amendment seizure occurs when an individual's freedom of movement is restrained by means of physical force or a show of authority.
62. A seizure occurs when an individual's freedom of movement is restrained by physical force or a show of authority.
63. Defendants Chief Malloy and Sgt. Robbins made repeated threats of arrest under the color of state law and their refusal to provide protection created a coercive environment where Plaintiff reasonably believed she could not enter her home, constituting a constructive seizure without probable cause or lawful justification.
64. Municipal Liability (Monell Claim)-under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality can be held liable where an official policy or custom caused the constitutional violation.
65. Defendants violated the constitutional rights of Ms. Lucas caused by a policy, practice, or custom of the municipality, and/or by a decision of a final policymaker (e.g., Chief Malloy or Town Manager McIntyre).

66. COUNT III – 42 U.S.C. § 1981: Racial Discrimination in Property Rights

67. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68. To state a claim under § 1981, Plaintiff must show (1) she is a member of a racial minority, (2) Defendants intended to discriminate on the basis of race, and (3) the discrimination interfered with a protected activity—here, her right to own and access property.

69. Defendants, acting with racial animus or disparate impact, obstructed Plaintiff's ability to access her jointly owned home, interfered with her lawful possession, and failed to provide equal protection and services provided to white residents.

## COUNT IV

*42 U.S.C. § 1982: Interference with Property Rights on the Basis of Race*

70. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Section 1982 guarantees all citizens the same right as white citizens to inherit, purchase, lease, sell, hold, and convey property.

72. Defendants interfered with Plaintiff's ability to hold and enjoy her jointly owned property, denied her equal treatment under the law, and subjected her to intimidation, violating her rights under § 1982.

## COUNT V

*Violation of Maine Civil Rights Act (17 M.R.S. § 2931)*

73. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

74. To establish a claim under the Maine Civil Rights Act, the Plaintiff must show that her constitutional rights were interfered with through threats, intimidation, or coercion.

75. Defendants used threats of arrest, refusal to perform law enforcement functions, and discriminatory treatment to intimidate Plaintiff and prevent her from exercising her constitutional property and equal protection rights.

76. The Plaintiff's allegations herein, in addition, to denying access to her property fall under this statute.

77. The Plaintiff alleges that the Defendant's conduct was motivated by discriminatory intent. The statute explicitly protects against the Defendant's action that caused Ms. Lucas to reasonable fear for her safety and suffer emotional distress.

## COUNT VI

*Violation of Maine Human Rights Act (5 M.R.S. § 4682)*

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. The Maine Human Rights Act provides remedies for individuals whose civil rights are interfered with through violence, threats, or discrimination.

80. The Plaintiff's claims of racial bias, threats, and denial of protection align with the protections afforded under this statute.

81. The Act allows for civil actions to address violations of constitutional and statutory rights 5 M.R.S. § 4682, 5 M.R.S. § 784.

82. COUNT VII – Negligent or Intentional Infliction of Emotional Distress

83. Defendants engaged in extreme and outrageous conduct by continuously threatening Plaintiff with arrest, denying her lawful access to her home, discriminating and ignoring pleas for equal treatment.

84. As a direct result, Plaintiff suffered severe emotional distress, anguish, fear, and humiliation, in addition to, sleeplessness, anxiety for which Defendants are liable under Maine tort law.

## COUNT VIII

*Declaratory and Injunctive Relief*

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. Plaintiff seeks declaratory relief that Defendants' conduct violated her rights under federal and state law.

87. Plaintiff further seeks injunctive relief ordering Defendants to cease discriminatory practices, comply with FOAA obligations, and provide equal access to police protection and property rights enforcement.

## COUNT IX

*Violation of Maine Freedom of Access Act (1 M.R.S. § 408-A)*

88. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

89. The Maine Freedom of Access Act requires public agencies to respond to lawful requests for records. The plaintiff's claim that the defendants failed to respond to her FOAA requests, thereby concealing misconduct, could constitute a violation of this statute if the failure was intentional and unjustified 5 M.R.S. § 4682, 5 M.R.S. § 4681.

90. Defendants Town of Gouldsboro, Chief Malloy, and Sgt. Robbins received lawful FOAA requests in and around 06/30/2025 from Ms. Lucas and presently have failed to respond or produce any records, violating 1 M.R.S. § 408-A, five (5) day business response.

91. This failure has concealed misconduct, undermined transparency, and contributed to Plaintiff's inability to pursue accountability from Gouldsboro Police Department and ex-partner Miller.

## COUNT X

*42 U.S.C. § 1983 – First Amendment Retaliation*

92. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

93. Plaintiff engaged in protected activity (seeking court orders, filing complaints, FOAA requests).

94. Defendants took adverse action (threats of arrest, denying escort, refusing to process service).

95. The adverse action was motivated by protected conduct.

## COUNT XI

*42 U.S. Code § 1985 - Conspiracy to interfere with civil rights.*

96. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

97. A conspiracy occurred between Miller and the Gouldsboro Police Department to deprive Ms. Lucas of equal protection of the laws, resulting in emotional, physical and financial injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Award compensatory and punitive damages in an amount to be determined at trial;

C. Declare that Defendants actions violated Plaintiffs constitutional and statutory rights;

D. Grant injunctive relief to prevent further violations;

E. Award attorney's fees and costs pursuant to 42 U.S.C. 1988; and

F. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: July 17, 2025

X _/s/ Nia Lucas_

Nia S. Lucas

6218 Georgia Ave NW

STE 1-488

Washinton, DC 20011

Phone: (571) 308-3198

Fax : (202) 552-4767

Email: nia.lucas@gmail.com